## DOTSON v. STOWERS.
### No. 66.

District Court, S. D. West Virginia,
at Charleston.

April 15, 1941.

Roland A. Clapperton, of Summersville, W.Va., for plaintiff.

A. N. Breckinridge, of Summersville, W. Va., and Bernard J. Pettigrew, of Charleston, W.Va., for defendant.

McCLINTIC, District Judge.

This action was brought by the plaintiff under the Act of Congress, 29 U.S.C.A. §§ 201–219, and known as the Fair Labor Standards Act of 1938.

It was alleged that when this Act went into effect, on the 24th day of October, 1938, the plaintiff was employed by the defendant at a rate of one dollar per day, of twelve and one-half hours, seven days per week, as a night watchman in a lumber yard near Summersville, in the County of Nicholas and State of West Virginia, and that such employment continued to and including the 29th day of May, 1939.

The complaint charged that the plaintiff had under his care, as such night watchman, lumber that had been sold to consumers outside of the State of West Virginia and into interstate commerce.

The plaintiff demanded judgment for the sum of twelve hundred and thirteen dollars and eighty-four cents, and interest and costs.

The defendant, by an answer filed in due and proper time, denied all liability; denied that he was subject to such statute, and denied that during the time mentioned in said complaint he was engaged in commerce or in the production of goods for commerce, within the meaning of the statute, and denied that the plaintiff was likewise engaged in commerce or in the production of goods for commerce, within the meaning of the statute.

### Findings of Fact.

The plaintiff was hired by the foreman of the defendant on the 21st day of August, 1938, as night watchman at the lumber yard, and the plaintiff also had the additional duty of cleaning up a small planer each evening and filling up the boiler of the engine with water, and getting the same ready to run the next day. He went on duty at six o'clock in the evening and stayed on duty until six-thirty o'clock in the morning.

The plaintiff had been subject to epileptic fits for a period of eighteen years prior to this employment. He had been certified to the relief agency as unemployable by its physician. He had been drawing, for some time previous to this employment, the sum of twenty-five dollars a month for relief, and had been obtaining a large quantity of commodities. At the time of the employment, and entirely through that time, he was drawing twenty-two dollars a month for relief, which he claimed was for dependent children.

The plaintiff applied to the foreman of defendant for employment, and the defendant, through his agent, did employ and agree to pay him a dollar a night for his services.

The Fair Labor Standards Act went into effect on the 24th day of October, 1938, and the plaintiff remained in this employment up to and including the 29th day of May, 1939.

Because of the fact that he was drawing relief, the plaintiff persuaded the defendant's bookkeeper to put his son, Gar-

land Dotson, on the payroll, and all moneys due the plaintiff under the contract of employment were paid to his son, Garland Dotson, who was eighteen years of age, for practically the entire time that the plaintiff claims he is entitled to compensation under the Fair Labor Standards Act.

There was a small house at the plant in which the plaintiff stayed. It had a stove in it, and some sort of a place wherein he could sleep. The son, Garland Dotson, helped the plaintiff do more or less work, because of his inability to do anything by reason of his epileptic fits.

The plaintiff does not appear to have done any real watching, in the sense that he covered the lumber yard at any hour in the night.

The planer was run very irregularly, and he had only to perform any of his duties in connection therewith when it was known that the planer would be in operation the next day.

The amount of lumber stacked in the yard was usually about two hundred thousand to three hundred thousand feet.

The defendant operated three retail grocery stores, and ran this lumber business in connection therewith. He owned a number of trucks, which delivered lumber to purchasers in any amount, from two or three boards up to a few thousand feet. The trucks would deliver lumber to purchasers at many points in Southern West Virginia and would bring back groceries to the stores.

The sawmill at the lumber yard was completely out of operation the whole time that the plaintiff worked for the defendant.

The defendant purchased lumber wherever he could find it for sale, when he had orders for the re-sale thereof. Some part of the lumber was prepared, under the orders received, on the planer.

The quantity of lumber sold by the defendant from the 21st day of August, 1938, the date of the employment of the plaintiff, to the 24th day of October, 1938, the date when the Act became effective, totaled one hundred thirty-seven thousand and seventeen board feet.

The quantity of lumber sold by the defendant from the 24th day of October, 1938, to the 31st day of May, 1939, which latter date was two days after plaintiff's employment by the defendant ceased, totaled six hundred seventy-one thousand and forty board feet.

The amount of lumber sold by the defendant from the 1st day of June, 1939, to January 1st, 1940, totaled six hundred seventy-five thousand, five hundred and eighty-seven board feet.

Of the six hundred, seventy-one thousand and forty feet of lumber sold and delivered from October 24th, 1938, to May 31st, 1939, there was sold and delivered to the James O. Lakin Advertising Company, of Cincinnati, Ohio, the quantity of forty-three thousand and four feet. However, five thousand, one hundred and forty-five feet of this quantity was sold on the 31st day of May, 1939, which date was after the time when plaintiff had ceased to be employed by the defendant. There was actually sold to Lakin, during the period of the employment of the defendant, and delivered to Lakin, the quantity of thirty-seven thousand, eight hundred fifty-nine feet of lumber, in seven different shipments.

Of this quantity, a total of thirty thousand, eight hundred and eighty-four feet was purchased from other persons, and this total was never on the premises of the defendant, or, in any manner, under the charge of the plaintiff, but was shipped direct to Lakin from the place where it was purchased from others.

Likewise was the five thousand, one hundred and forty-five feet of lumber, which was shipped to Lakin on the 31st day of May, 1939.

Of the amount that was sold and shipped to Lakin, there was only six thousand, nine hundred and seventy-five feet of lumber worked over on the planer in the yard where plaintiff was employed.

During the period from the time of the original employment of plaintiff in August, 1938, to the 1st day of January, 1940, out of one million, four hundred eighty-three thousand, six hundred and forty-four feet of lumber sold and delivered to purchasers, only forty-three thousand and four feet was shipped out of the State of West Virginia into any other state. This quantity of forty-three thousand and four feet was delivered in eight separate shipments.

### Conclusions of Law.

Section 213 of 29 U.S.C.A. as aforesaid, provides certain exemptions from the provisions of Sections 206 and 207 of Title 29.

I hold, as a conclusion of law, that the defendant, Stowers, was engaged in the retail lumber business alone, and that the plaintiff, Dotson, was engaged in a retail and service establishment, the greater part of whose selling and servicing was in intrastate commerce.

I hold that the defendant, Stowers, was not engaged in interstate commerce.

Therefore, it follows that judgment should be for the defendant in this case.